**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICTS**

IN RE: MAGISTERIAL DISTRICT JUDGE : No. 84 MM 2013
MARK A. BRUNO, MAGISTERIAL :
DISTRICT 15-1-01 : Petition to Vacate the Order of the
: Supreme Court dated February 1, 2013
:
PETITION OF: MARK A. BRUNO : ARGUED: September 10, 2013

**CONCURRING OPINION**

DECIDED: August 28, 2014
**MADAME JUSTICE TODD** OPINION FILED: October 1, 2014

While I agree with much of the Majority Opinion, I join Justice Saylor's thoughtful Concurring Opinion, which acknowledges our jurisdiction and power to suspend a jurist on an interim basis, but at the same time (1) reserves our King's Bench power in this constitutionally complex and delicate area to extraordinary circumstances; and (2) emphasizes the primacy of the role of the Court of Judicial Discipline ("CJD"), as prescribed by our citizenry through the 1993 amendment to Article V, Section 18 of our Constitution.

I write separately to emphasize that the interplay between Article V, Section 18 and our King's Bench powers may be distinct from that addressing a magisterial district judge, as in the instant case, or in the case of a trial or appellate judge, versus when the conduct at issue is that of a Justice of our Supreme Court. Unlike in the case of any other jurist, this Court has no appellate review of a CJD's decision concerning the discipline of a Justice. Pa. Const. art. V, § 18(c)(1). While the majority speaks in sweeping terms, it notes only as an aside this limitation, in stating that our Court has appellate jurisdiction to review CJD determinations "with a limited exception not applicable here," Majority Opinion at 82, and in otherwise relegating any discussion of

this limitation to a brief footnote, <u>see</u> Majority Opinion at 40 n.14 (CJD decisions are not subject to direct appellate review by our Court "where a Justice of the Supreme Court is subject to CJD discipline."). Yet, the 1993 amendment to our organic charter was born of public disapproval of our Court's expansion of judicial power and a desire for judicial reform. The resulting amendment constituted a momentous and far-reaching overhaul of the method for disciplining jurists in Pennsylvania, including implementing an idiosyncratic process for the discipline of Justices. Our Court must be loath to unwittingly write out of the Constitution the peoples' intent vis-à-vis the process for addressing alleged Justice misconduct through the exercise of our "supervisory and administrative" responsibilities and authority.

Of course, we do not currently have before us questions regarding the appropriate process for addressing alleged misbehavior by a Justice of this Court. However, given the breadth of the Majority Opinion, and this "unforeseen opportunity at dialogue and greater understanding for all entities," Majority Opinion at 86, it is important to caution that the calculus regarding the extent of our King's Bench powers may be different when it is a Justice's alleged impropriety that is at issue.